Curia, per
Caldwell, Ch.
The first question is, has the subject matter of the plaintiffs’s bill been already adjudged in the Court of Law 7
The plaintiffs are the executors of Enos Tate: the testator brought an action of assumpsit against James H. Cobb, late sheriff of Abbeville district, which abated by the plaintiff’s death; these plaintiffs, then, instituted a similar suit against Cobb to recover $1276 59 with interest, for so much money had and received as sheiiff out of the proceeds of the property of A. D. Hunter, under execution. The plaintiffs endeavored to establish that this amount ought to be applied to the payment of Enos Tate’s judgment v. A. D. Hunter, although it was junior to a judgment of M. B. Clark v. A. D. Hunter, (that had been assigned to Alex. Hunter,) which they insisted was inoperative, or had been satisfied. James H. Cobb was the nominal defendant, Alexander Hunter was personally present at the trial, and sustained Cobb’s defence, and “was” (says Justice Withers in his report,) “obviously the party in interest.” The letter of the 7th of October, 1842, written by Alexander Hunter, and sent by A. D. Hunter to sheriff Cobb, and the agreement of Alexander Hunter with Tate, were offered and received in evidence ; the plaintiffs also offered the declarations of Alexander Hunter in the fall of 1842, as to the amount for which he was then liable for A. D. Hunter — to this defendant objected, but the objection was overruled, and the declarations were admitted in evidence.
The defendant, then, went into an account of what he had paid for A. D. Hunter, and also of what he had received from the proceeds of the' sales of the mortgaged negroes, which left a balance of about $1260 due to Alexander Hunter. The report of the circuit Judge shows that the various *146 questions, arising out of the transaction, were discussed and submitted to the jury, who found a verdict for the defendant. On an appeal the case was sent back for a new trial without prejudice, and the attention of the parties particularly directed to enquiries that had been pretermitted on the former trial, and that were supposed to be material to develope the merits of the case. On the second trial the jury found a verdict for the defendant, and the plaintiffs again appealed; and the Court of Appeals, in refusing the motion for anew trial, says, “ We are indeed now informed at the bar, that the real and substantial issue was overlooked by the plaintiffs, inasmuch as it has been discovered, too late for the last trial, that the money in controversy was part proceeds of negroes expressly and unconditionally released by Hunter from the lien of his execution in favor of that of Tate, by the terms of their agreement of 12th September, 1842, to wit: that all the ne-groes that came by the wife of Alexander D. Hunter should be liable to Tate’s execution.”
Allen v. Rountree, MS. Cases, 1832; Divis v. Willborne, 1 Hill L. R. 27: Brown v. McMullen 29; Davis v. Hunt, 2 Bail. R. 412.
The Court then proceeds to say, i! this matter is suggested by a portion of an agreement used on both trials — the fact referred to was at all times capable of ascertainment; was indeed as fully and as conveniently accessible to the plaintiffs at one time as another: we are, therefore, constrained to dismiss this consideration on the present occasion.” From a careful comparison of the matters set forth in the plaintiff’s bill, with what occurred on the trial at law, it is difficult to perceive any material difference between them. The omission to produce proof at law, in relation to Agnes’s negroes, (those that had been mortgaged,) has not been satisfactorily supplied here, and every other point involved in the issue in that Court, seems to be set up only m a new shape in the plaintiff’s bill, the result of the case mainly turning upon the question, was Alexander Hunter’s execution inoperative, or had it been satisfied ?
Alexander Hunter appears, in the proceeding at law, to have stood in a similar condition to one who has been vouched in an action to try the title to property that lie had warranted and sold. When the sheriff collected the money he at first might be considered as the stakeholder for the judg-an(^ mortgage creditors, but when he resisted the claim l^e plaintiffs, he put himself in the attitude of the defendant’s agent, and Alexander Hunter must, therefore, be considered the real defendant, whose better claim to the fund protected the nominal defendant, and prevailed against the plaintiffs. If the plaintiffs had finally succeeded against the sheriff in that case, can there be a doubt that Alexander Hunter could not have come here and setup the same claim to the fund as plaintiff in a bill, when he had been defeated in his defence at law, on the same grounds ? The sheriff *147 appears to have stood solely upon the rights of Alexander Hunter, who sustained and directed the defence, and thereby distinctly put in issue his claim to the money, and became a privy to the proceedings. It is very clear that he have been incompetent to testify as a witness in that case, on account of his certain and immediate interest in the result.— The mere form of the suit, or the use of the names of nominal parties, cannot divest the case of its real character, but the issues made by the real parties, and the actual interests involved, must determine what persons are precluded from again agitating the question, and who are estopped by the previous decision.
Bail. R.412.
Dubosev M'clanaghan, Columbia, Dec'r 1829; Wightman sheriff of Charleston, Mss. December, 1825.
Chitty on Cont. 54; Bulow v. Godard, 1 M. & McC. 45; Moses v. McFarlan, 2 Bur. 1005.
The claim of a judgment creditor to funds in the sheriff’s hands, collected from the sale of the debtor’s property, is frequently asserted by this form of action, which seems to be admirably adapted to unfold the plaintiff’s cause of action, and the defendant’s grounds of defence. Although such2 questions, in a plain case, might be determined on a rule against the sheriff, yet where there is any complexity in the eireumstances, and the question depends upon testimony of witnesses to establish facts independently of what appears from the executions and returns of the sheriff, the Court generally declines to decide in a summary way by rule, and leaves the parties to pursue their remedies in a due course of law. Of late years, special issues are frequently ordered by the Couit of Law, to be made up between the parties, for the purpose of trying their rights to the fund, and the practice seems to be peculiarly proper where the money has been collected by the sheriff under the process of that Court.
The form of action at law was the most favorable that could have been adopted to try the questions between the parties, and no testimony appears to have been excluded there, that could have been offered here: indeed a suit money had and received approximates more nearly than any other form the mode of proceeding in this Court, and is sentially an equitable action, in which the plaintiff is entitled to recover money from the defendant which, ex equo et bono, he ought not to retain. There was no difficulty in reaching the merits of the case in that tribunal, which was as competent as this Court to decide the case.
Whatever funds defendant received under the mortgage, was a fair subject for proof ,on that trial, as here, and ought to have been, adduced: th.e plaintiffs’s omission to offer evidence on this, or on any other point involved in that suit, brings them within the rule, that not only what the party in a cause has. but whatever he might have, litigated in a Court of competent jurisdiction, shall not be agitated again in a subsequent suit between the same parties. The plaintiffs were bound to establish their claim by evidence, and *148 their failure to do so cannot give this Court jurisdiction : they not only adduced the letter, agreement and declarations of defendant, but went into a full account of what he had re-0f ^ £)_ Hunter, thereby recognizing him as the real defendant, and making their case turn upon the material point in issue, the validity of the judgment assigned by Clark to him. After all this, it was certainly not res inter alios acta.
Dec'r Term, 1847,Columbia.
2 Strob. E. It 14.
2 Story Eq. Jur S. 1520-1028; Wilson v. Wilson, Mul. Eq. Rhyn v. Vincent’s ex’rs. 1 McC. Ch. R. 169; Ex parte Hanks Cheves E. R. 203.
The proof here has not shed any new light on the subject; nor have the plaintiffs, in any essential part, varied their case from what it was at law; the question must, therefore, be considered as res adjudícala, as it arose out of the same subject matter which has heretofore been tried in a competent Court between the same parties, substantially. This case resembles Aiken v. Peay, where the proof extended into the accounts between the respective parties and one Ford, who was their debtor, and turned out to be insolvent: the verdict at law, in favor of Peay, was held to be conclusive, and plaintiff's bill was dismissed.
As we fully concur with the Chancellor who heard the case on the circuit, that it is res adjudícala, this view would be sufficient.to terminate it, as the plaintiffs cannot sustain their bill against the defendant. But another important question has been raised ; does the statute of limitations operate as a bar? This deserves to be considered and determined. The plaintifls’s bill was filed on the 19th of April, 1848, and their equity or cause of action must have arisen in October, 1842, when sheriff Cobb received and retained the sum of $1276 59 to pay the judgment of M. B. Clark, who had assigned it to defendant. If the Courts had concurrent jurisdiction, (about which there can be no doubt,) the plaintiffs have exercised their privilege of choosing their tribunal, whose judgment must be presumed to be just, and with which it would seem they should be content. In cases of concurrent jurisdiction, the same rule as to the statute of limitations prevails in both Courts. In the recent case of Turnbull v. Gadsden, it was held that the statute of limitations is equally a bar in this as in the Court of Law, where plaint^ might have prosecuted her cause of action. It seems to be reasonable, consistent and just that the same rule should be applied to legal rights of which the Courts have concurrent jurisdiction. “ The statutes of limitations,” Justice Story, “where they are addressed to Courts of Equity, as well as to Courts of Law, as they seem to be in all cases of concurrent jurisdiction at law and in equity, (as f°r example in matters of account,) to which they directly apply, seem equally obligatory in each Court.”
There are other cases in which this Court acts upon the *149 analogy of. the statute of limitations at law, and bars the relief in equity. As four years had elapsed between the accruing of the plaintiffs’s rights, and the filing of their bill, their claim is barred by the statute.
It is, therefore, ordered and decreed that the circuit decree be modified, and that the plaintiffs’s bill be dismissed.
Dunkin ana Dargan, CC. concurred.
Johnston, Ch. absent, from indisposition, at the hearing.

Decree modified.